(C. D. 1773)

Sᴄʜᴏᴇɴꜰᴇʟᴅ & Sᴏɴs, Iɴᴄ. *v.* Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs

United States Customs Court, Third Division

(Decided April 12, 1956)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon, Harold L. Grossman*, and *Henry J. O'Neill*, trial attorneys), for the defendant.
*Pope, Ballard & Loos* (*John Breckinridge, Alexander M. Heron*, and *John A. Curtiss* of counsel) as *amicus curiae.*

Before Eᴋᴡᴀʟʟ, Jᴏʜɴsᴏɴ, and Dᴏɴʟᴏɴ, Judges

Dᴏɴʟᴏɴ, Judge: By stipulation, dated September 29, 1955, the prior submission of this case was vacated and the case resubmitted to the third division of this court as now constituted.

The collector classified the merchandise in these cases under paragraph 775 as vegetables, prepared, preserved, or reduced in size. Plaintiff contends that the classification should be under paragraph 781 as spices, not specially provided for.

These protests have been consolidated, and there is a voluminous record. While the merchandise in the several invoices is variously described, it appears that all of the merchandise at issue under the several protests before us falls into one or another of three categories, as follows:

1. Dehydrated onions, chopped or sliced, reduced to small pieces described by plaintiff as "kibbled onions."

2. Onion powder.

3. Garlic powder.

In addition to the briefs filed by plaintiff and defendant, we have had the opportunity of reviewing arguments and precedents presented in a brief of *amicus curiae*.

Much of the testimony, and most of the argument, was addressed to the first of these products, namely, "kibbled onions." Our decision with respect to "kibbled onions" will not necessarily be controlling of our decision with respect to the powder, or ground, vegetable substances, which are the second and third categories of merchandise in these cases. However, we shall first dispose of the issue as to "kibbled onions."

There is, of course, no contention that onions are not, in fact, a vegetable. The onions we are considering were dried, or dehydrated, and reduced in size through a process of slicing or chopping, the resulting product being small pieces or particles of dehydrated onion. It is the essence of plaintiff's position, as argued before us, that, although "kibbled onions" by definition would seem to come within paragraph 775, they are used not as a vegetable, but for the purpose of flavoring foods, and should be classified under paragraph 781 as spices, not specially provided for.

Merchandise described as dehydrated "kibbled onions" came before this court in the case of *Schoenfeld & Sons* v. *United States*, 29 Cust. Ct. 177, C. D. 1464. The record in that case has been incorporated into the record in this case. In the earlier *Schoenfeld* case, this court summarized the testimony, as follows, at page 182 of the cited report:

The testimony herein establishes that kibbled onions are pungent and appetizing substances, which give relish to food and gratify the taste, and that they are used by bakers on onion rolls, by butchers and food processors in the manufacture of sausages, and to give taste to canned meats, stuffed fish, and other food preparations. *No use other than as a seasoning has been shown by the evidence.* * * * [Emphasis supplied.]

The record in the case of *Charles T. Wilson Co., Inc.*, v. *United States*, 38 C. C. P. A. (Customs) 19, C. A. D. 433, has also been incorporated into the record in this case. In the *Wilson* case, evidence as to use was reviewed by our appellate court in its opinion, as follows, at page 22:

The testimony of the witness Meinohl was to the effect that normally fresh onions were used in the preparation of specified dishes but when fresh onions could not be obtained dehydrated onions were used in field operations and overseas duty *as an effective substitute for the fresh onions; that the fundamental use of dehydrated onions in such instances was that of a vegetable;* and that dehydrated onions or onion powder *gives a relish to food by improving the flavor and appetite.* [Emphasis supplied.]

In the *Wilson* case, our appellate court held the dehydrated onion slices classifiable under paragraph 775 as vegetables, cut, sliced, or otherwise reduced in size.

Our court, in the earlier *Schoenfeld* case, followed the principle laid down in the *Wilson* case and, since no use of the "kibbled onions" other than as a seasoning was shown by the evidence of record, held the merchandise in that case classifiable as a spice.

Size seems to have been the chief physical difference between the dehydrated onion slices in the *Wilson* case and the "kibbled onions" in the earlier *Schoenfeld* case. There is testimony in our case that the term "kibbled," as applied to dehydrated onion pieces, has no established meaning in the trade and that it is interchangeable with the terms "onion flakes," "chips," or "slices." Probably whatever acceptance the term "kibbled onions" has in the trade is to designate relatively small flakes or pieces of dehydrated onion.

Here, the record is not empty, as it was in the earlier *Schoenfeld* case, as to vegetable uses of the product. Testimony adduced by defendant shows the following such uses: As a substitute for fresh onions to smother hamburgers (p. 150); as a main ingredient in creamed onion soup (p. 183); to add bulk and for food value in baby foods (pp. 2862–89); mixed with other vegetables for a vegetable soup base (p. 310); as a relish base and in vegetable meat loaf (p. 317); as a principal ingredient in gefüllte fish (p. 324); as an ingredient in lentil, minestrone, and pasta fozoola soups (p. 350); in potato salads (p. 357); in spaghetti and similar sauces (p. 393); in chow mein, in combination with other vegetables, and in Spanish rice (p. 405).

Plaintiff, on cross-examination, brought out the fact that in most, if not all, of these uses of "kibbled onions" the product imparts flavoring. That is true also, of course, when fresh onions are used.

In the *Wilson* case, our appellate court resolved that kind of conflict in testimony, as follows, at page 23:

> The testimony submitted by the Government in the instant case outweighed the testimony submitted by appellant tending to establish that sliced dehydrated onions were chiefly used as spice. Appellant therefore failed to overcome the presumption of correctness attaching to the collector's classification with respect to that portion of the importation.

We are of the opinion that uses of "kibbled onions" other than as seasoning have been shown by the evidence in the instant case and that plaintiff has failed to overcome the presumption of the correctness of the collector's vegetable classification with respect to "kibbled onions," that is, dehydrated onion flakes or particles.

In the two cases, the records of which have been incorporated into the record of this case, the merchandise considered by the court included onion powder, in the *Wilson* case, and garlic powder, in the

*Schoenfeld* case. In both cases, the powder form was held dutiable under paragraph 781, as spice, not specially provided for. The records in both cases contained evidence showing use for seasoning, rather than use as a vegetable.

While a great deal of testimony was adduced in the instant case with respect to the use of "kibbled onions" as a vegetable, there was relatively little evidence with respect to the powder forms. Defendant's chief reliance on their use as a vegetable appears to rest on testimony of one of defendant's witnesses who said that onion powder is used in substitution for fresh onions in the manufacture of ketchup.

Webster's New International Dictionary, second edition (1956), defines "ketchup" or "catchup," as the term is used in the United States, as "A tomato sauce of puree consistency, seasoned with vinegar, spices, and sugar." Plaintiff's witness conceded that onion powder is preferable to fresh onions in the manufacture of ketchup; and from the above-quoted definition of ketchup, as a sauce of *puree* consistency, that opinion of the witness is understandably accurate.

The defendant's witness, Mr. Ludington, testified (p. 286) that while manufacturers of baby foods are forbidden by the doctors to use "spices" in baby foods, they do use onion powder. This may throw some light of limited significance on the acceptance given in the baby-food trade, to onion powder as a spice; but it may be noted that the witness did not state what these medical instructions defined as "spices."

Aside from this reference to the use of onion powder in ketchup and in baby foods, both of which are products of puree consistency, the testimony fails to relate either onion powder or garlic powder to use other than as a flavoring. The record in the instant case, therefore, as to powder forms, is not substantially different from the incorporated records.

There is nothing in the record as to garlic powder that supports a reversal of the considered decision of this court in the earlier *Schoenfeld* case, as to that product.

Both plaintiff and defendant present, in their briefs, arguments relative to the *eo nomine* designation of onion powder as a spice, in the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739. To be sure, that *eo nomine* designation is by way of withdrawal of onion powder from the reduced rate, in the general agreement, for spices, not specially provided for. It has the effect, therefore, of an *eo nomine* designation of onion powder at the unreduced rate, under paragraph 781. While our appellate court was considering, in *Atalanta Trading Corp.* v. *United States*, 42 C. C. P. A. (Customs) 90, C. A. D. 577, paragraph 1558 of the tariff act, as modified by the trade agreement with Cuba, T. D. 51819, particularly an *eo nomine* designation, in that agreement, of frozen frog

legs, the reasoning of our appellate court and the decision in that case are applicable to the *eo nomine* designation of onion powder in the Torquay protocol.

However, the onion powder which is the subject of these protests was imported during 1949 and 1950, and the effective date of the Torquay protocol as to onion powder was July 6, 1951. The rate of duty on this merchandise is, therefore, the reduced rate provided in the General Agreement on Tariffs and Trade, effective July 9, 1948, by the President's proclamation, T. D. 51954. That rate is 12½ per centum ad valorem.

We hold, under these several protests, that:

1. Dehydrated onion pieces, described as "kibbled" and as flakes, are vegetables, cut, sliced, or otherwise reduced in size, prepared or preserved, dutiable at a rate of 17½ per centum ad valorem under paragraph 775 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and the President's proclamation of May 4, 1948, T. D. 51909.

2. Onion powder is a spice, dutiable at the date of entry at a rate of 12½ per centum ad valorem under paragraph 781 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and the President's proclamation of June 25, 1948, T. D. 51954.

3. Garlic powder is a spice, dutiable at the date of entry at a rate of 12½ per centum ad valorem under paragraph 781 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and the President's proclamation of June 25, 1948, T. D. 51954.

Plaintiff's protests against the collector's classification of "kibbled onions" and onion flakes are overruled. As to the onion powder and garlic powder, the protests are sustained. Judgment will be rendered accordingly.